UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DERRICK ALVIN BLAIR, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:10CV1973 JCH |
| ) | |
| SEAN BROWN and PAT COLBERT, ) | |
| ) | |
| Defendant(s). ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment (ECF No. 41), filed on September 26, 2011. This matter is fully briefed and ready for disposition.

## BACKGROUND

On July 4, 2009, at approximately 1:30 A.M., Defendant Sean Brown with the Lincoln County Sheriff's Department responded to a reported assault in progress in the vicinity of South Seventh Street in Elsberry, Missouri. (Complaint, ECF No. 1, at Ex. D, p. 5). Defendant Brown was accompanied by his canine, Nikko. (Id.). Upon his arrival, Defendant Brown was informed by witnesses that Plaintiff was in a wooded area assaulting a female. (Id.). Defendant Brown attempted to locate the subjects involved in the alleged assault. (Id.). At some point Defendant Brown retrieved Nikko from his vehicle to assist in his search. (Id.).

Defendant Pat Colbert with the Elsberry Police Department was also dispatched to the scene of the reported assault at approximately 1:30 A.M., and when he arrived he made contact with Defendant Brown and Nikko. (Complaint, ECF No. 1, at Ex. C, p. 2). Defendant Brown and Defendant Colbert determined Plaintiff was located in a nearby trailer. (Id., at Ex. C, p. 2; Ex. D, p. 5). Defendant Brown entered the trailer while Defendant Colbert searched the outside of the trailer.

(Id., at Ex. C, p. 2). Defendant Brown located Plaintiff in the bathroom of the trailer, and Defendant Colbert entered the trailer behind Defendant Brown. (Id.).

Plaintiff and Defendants dispute the remaining sequence of events. According to Plaintiff, he complied with Defendant's instructions to show his hands. (Supplemental Complaint, ECF No. 25, p. 1). Plaintiff contends Defendant Brown nonetheless "tased" Plaintiff with his Taser, causing Plaintiff to fall to the floor. (Id.). Plaintiff asserts Defendant Brown ordered Nikko to attack Plaintiff and used racial slurs to encourage Nikko. (Id., pp. 1, 2). Plaintiff claims Defendant Brown "tased" Plaintiff a second time and again ordered Nikko to attack him. (Id., p. 2). While Plaintiff was lying on the floor, Defendant Colbert began kicking Plaintiff in the ribcage and using racial slurs. (Id.). After Plaintiff was handcuffed, Defendant Colbert kicked Plaintiff in the side of the neck. (Id.). Plaintiff fell through the floor in the trailer while Defendants were leading him outside, and Defendants lifted Plaintiff out of the broken flooring by his handcuffs. (Id.).

Plaintiff also asserts Defendant Brown struck Plaintiff on the back of the head with his flashlight and "tased" Plaintiff a third time while Plaintiff was seated in the backseat of a police vehicle. (Id., p. 3). Plaintiff asserts Defendants refused to allow emergency medical personnel ("EMS") at the scene to administer medical care to Plaintiff, although Plaintiff acknowledges he was later treated at Lincoln County Medical Center ("LCMC") in Troy, Missouri. (Id.; see also Plaintiff's Objection to Defendants' Motion for Summary Judgment and Moves to Strike the Petition ("Plaintiff's Objection"), ECF No. 44, pp. 12, 13).

Defendants' version of the arrest differs from Plaintiff's. According to Defendants, Plaintiff refused to show Defendants his hands after Defendant Brown instructed him to do so. (Defendants' Statement of Uncontroverted Facts ("Statement of Facts"), ECF No. 42, ¶ 9). Defendant Brown removed his Taser from his holster and warned Plaintiff he would use the Taser if Plaintiff did not

comply. (Id., ¶ 10). Defendant Brown "tased" Plaintiff once when Plaintiff did not comply, and Defendant Brown "tased" Plaintiff a second time after Plaintiff refused to comply with another request to remove his hands from behind his back. (Id., ¶¶ 10, 11). At this time, Plaintiff removed his hands from behind his back. (Id., ¶ 12).

Defendants assert that, as Defendant Colbert placed one handcuff on Plaintiff's left wrist, Plaintiff pushed aggressively against Defendant Colbert and began moving out of the bathroom and towards Defendant Brown. (Id.). Defendants contend that as a result of Plaintiff's aggression towards Defendants, Nikko lunged at Plaintiff, biting Plaintiff on the right thigh. (Id., ¶ 9; Defendants Sean Brown and Pat Colbert's Motion for Summary Judgment ("Motion for Summary Judgment"), ECF No. 41, at Exhibit A, ¶ 11). Defendants assert Defendant Brown did not instruct Nikko to attack Plaintiff and state Nikko bit Plaintiff to protect Defendants. (Statement of Facts, ECF No. 42, ¶ 9; Motion for Summary Judgment, ECF No. 41, at Exhibit A, ¶ 11). Plaintiff struck Nikko in the face with his right hand, causing Nikko to lose his grip on Plaintiff's thigh temporarily before biting Plaintiff on the right thigh again. (Statement of Facts, ECF No. 42, ¶ 9). Defendant Brown recalled Nikko, and Defendants were able to finish handcuffing Plaintiff. (Id., ¶ 13). Plaintiff and Defendants all fell through rotted flooring in the mobile home as they exited the structure. (Id., ¶ 14).

According to Defendants, EMS from the Lincoln County Ambulance District ("LCAD") were at the scene and provided some medical care to Plaintiff. (Id., ¶ 15; Motion for Summary Judgment, ECF No. 41, at Exhibit D, p. 2). Records from LCAD state Plaintiff was evaluated and found to have the following injuries: multiple superficial abrasions to the back, thorax, and upper and lower extremities; and puncture wounds to the right upper femur and occipital region of the skull. (Motion for Summary Judgment, ECF No. 41, at Exhibit D, p. 2). Defendants informed EMS that Plaintiff had been "tased," and Plaintiff told EMS he had been bitten by a dog. (Id.). Plaintiff permitted EMS

to cleanse and bandage his wounds before becoming uncooperative and combative. (Id.). EMS had initially offered to transport Plaintiff to LCMC for further evaluation, but EMS later refused to transport Plaintiff due to safety concerns. (Id.). Instead, Plaintiff was taken to LCMC by Defendants. (Id.).

Records from LCMC indicate Plaintiff arrived with multiple scratches to the back, an undetermined laceration to the back of the head, some scratches and bites to both lower extremities, and bruising to the back of the neck. (Id., at Exhibit E, p. 3). Upon further examination it was noted Plaintiff had "tazer" marks on his right upper arm and right upper chest. (Id., at Exhibit E, p. 4). Plaintiff's wounds were cleansed and Plaintiff was given a tetanus/diptheria shot. (Id.). Plaintiff was given oral pain medication, oral antibiotics, and an ice pack for the wound to his head. (Id.). Plaintiff was determined to be fit for confinement, and Plaintiff was discharged to jail. (Id., at Exhibit E, p. 4, 6).

Plaintiff filed this action on October 18, 2010, alleging various claims against Defendant Brown, Defendant Colbert, the Lincoln County Sheriff's Department, the Elsberry Police Department, and Nikko. (See Complaint, ECF No. 1). Plaintiff's claims include deliberate indifference to serious medical need and excessive force. (See id., p. 1). On November 4, 2010, the Court dismissed Defendants Lincoln County Sheriff's Department, Elsberry Police Department, and Nikko, with prejudice, on the grounds that Plaintiff's Complaint failed to state a claim upon which relief could be granted as to those defendants. (Order of Partial Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B), ECF No. 6). Defendants filed their motion for summary judgment on September 26, 2011. (Motion for Summary Judgment, ECF No. 41).

## STANDARD FOR SUMMARY JUDGMENT

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

### A. Deliberate Indifference to Serious Medical Need

Defendants argue they are entitled to summary judgment on Plaintiff's claim of deliberate indifference to serious medical need because Plaintiff was provided adequate medical care. The Court

finds that, even assuming Plaintiff was not provided proper treatment by EMS at the scene of his arrest, Defendants did not disregard a known risk to Plaintiff's health.

The Eighth Amendment's proscription against cruel and unusual punishments is violated by deliberate indifference to serious medical needs of prisoners. City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 243-44 (1983). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention. Cambreros v. Branstad, 73 F.3d 174, 176 (8th Cir.1995). Under the Fourteenth Amendment, pretrial detainees are entitled to at least as great protection as that afforded convicted prisoners under the Eighth Amendment. Vaughn v. Greene Cnty., Ark., 438 F.3d 845, 850 (8th Cir. 2006).

The Eighth Circuit applies to pretrial detainees "the same 'deliberate indifference' standard as is applied to Eighth Amendment claims made by convicted inmates." Id. (citation omitted). The Eighth Circuit has also noted as follows:

> Under this standard, an official is deliberately indifferent (reckless) if he disregards a known risk to a prisoner's health. To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk. Rather, a Plaintiff must demonstrate the official actually knew of the risk and deliberately disregarded it.

Id. (citations and quotations omitted). Deliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed. Peitrafeso v. Lawrence Cnty., S.D., 452 F.3d 978, 983 (8th Cir. 2006). However, a showing of deliberate indifference is greater than gross negligence and requires more than mere disagreement with treatment decisions. Id.

While Plaintiff may dispute the timeliness and sufficiency of the medical care he received, Plaintiff acknowledges he was examined and treated at LCMC within two hours of his arrest. (See

Plaintiff's Objection, ECF No. 44, p. 13). Plaintiff admits the hospital personnel noticed a laceration to Plaintiff's head, bruising to the back of Plaintiff's neck, and bruising to Plaintiff's shoulders. (Id., pp. 14, 15). Records from LCMC show Plaintiff's bite wounds and lacerations were cleaned and bandaged, and Plaintiff was given a tetanus/diptheria shot in addition to pain medication and antibiotics. Therefore, viewing the facts in the light most favorable to Plaintiff, Defendants did not prevent Plaintiff from receiving adequate medical treatment.

The Court notes Plaintiff's main complaint appears to be that medical personnel at LCMC failed to take MRIs or x-rays of Plaintiff's neck, back, and shoulders. "Federal courts are reluctant to second guess treatment decisions made by competent physicians. Disagreement with a medical judgment is not sufficient to state a claim for deliberate indifference to medical needs." Reynolds v. Crawford, No. 2:06CV00009, 2007 WL 1656269, at *3 (E.D. Mo. June 6, 2007)(internal quotations and citations omitted); see also Bell v. Hakala, 2011 WL 2671826 at *5 (E.D. Mo. Jul. 8, 2011) ("Medical care so inappropriate as to evince intentional maltreatment or a refusal to provide essential care violates the Eighth Amendment, but a mere disagreement with the course of medical treatment does not constitute a claim of deliberate indifference.") (citations omitted). Plaintiff's assertion that the medical personnel at LCMC did not order MRIs or x-rays does not rise to the level of intentional maltreatment or a refusal to provide essential care so as to constitute deliberate indifference.

Therefore, the Court finds insufficient evidence to show Defendants were deliberately indifferent to Plaintiff's serious medical needs. Defendant's Motion for Summary Judgment as to Plaintiff's claim for deliberate indifference to serious medical need must be granted.

**B.     Excessive Force**

Defendants assert they are entitled to summary judgment on Plaintiff's excessive force claim for two reasons: first, Defendants are protected by qualified immunity, and second, the force used by

Defendants was reasonable.[1] The Court finds that Defendants are not entitled to qualified immunity and that genuine issues of material fact exist as to whether the force used by Defendants was reasonable.

### 1. Qualified Immunity

The traditional sequence for resolving a qualified immunity claim is to ask "whether the facts alleged or shown, construed in the light most favorable to [the plaintiff], establish a violation of a constitutional ... right," and "whether that constitutional right was clearly established as of [the date of the alleged violation], such that a reasonable official would have known that his actions were unlawful." Shannon v. Koehler, 616 F.3d 862 (8th Cir. 2010) (quoting Krout v. Goemmer, 583 F.3d 557, 564 (8th Cir. 2009)); see also Pearson v. Callahan, 555 U.S. 223 (2009) (holding that while this "two-step protocol," originally set out in Saucier v. Katz, 533 U.S. 194 (2001), "is often appropriate, it should no longer be regarded as mandatory")). The right must exist "in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

The Court will not dismiss Plaintiff's excessive force claim on the basis of qualified immunity. Plaintiff's allegations, when viewed in the light most favorable to him, suggest that Defendants' use of force rose to the level of a constitutional violation. Plaintiff asserts Defendant Brown "tased" Plaintiff several times despite Plaintiff's cooperation with Defendants' orders, ordered Nikko to

---

[1]Defendants also argue they are entitled to summary judgment because Defendants' use of force resulted in injuries that were de minimis as a matter of law. (Memorandum of Law in Support of Defendants' Motion for Summary Judgment, ECF No. 43, p. 3, 13). It is unclear to the Court whether Defendants ground this argument in an analysis of Defendants' qualified immunity or an analysis of the reasonableness of the force used by Defendants. Regardless, the Court does not find it necessary to evaluate whether Plaintiff's injuries were de minimis as a matter of law in order to rule on Defendants' motion.

attack Plaintiff, and used racial slurs to taunt Plaintiff. (Supplemental Complaint, ECF No. 25, pp. 1, 2). Plaintiff claims Defendant Colbert kicked Plaintiff several times while Plaintiff was lying handcuffed on the floor and also used racial slurs to taunt Plaintiff. (Id., p. 2). Finally, Plaintiff asserts Defendant Brown struck him on the back of the head with his flashlight. (Id., p. 3). These allegations suggest Defendants' use of force was unconstitutional.

Additionally, the prohibition against using excessive force when effecting an arrest is clearly established. Wagner v. City of Pine Lawn, No. 4:05-CV-1901, 2008 WL 350988, at *5 (E.D. Mo. Feb. 7, 2008). A reasonable police officer would know that the use of excessive force in effecting an arrest is prohibited, and a reasonable police officer would know that the conduct Plaintiff complains of constitutes excessive force. Therefore, the Court cannot find that Defendants are entitled to qualified immunity on Plaintiff's excessive force claim as a matter of law.

## 2. Reasonableness of the Force Used

The Eighth Circuit analyzes claims that police employed excessive force during an arrest under the Fourth Amendment standard of "objective reasonableness." Wertish v. Krueger, 433 F.3d 1062, 1066 (8th Cir. 2006). The reasonableness of a particular use of force depends on the circumstances of each case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989).

> Our vantage point must be that of a reasonable officer on the scene, not the 20/20 vision of hindsight. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."

Wertish, 433 F.3d at 1066 (quoting Graham v. O'Connor, 490 U.S. 386, 396–97 (1989)). "It is well settled that police officers may use some degree of force in effecting a lawful arrest." Krueger v. Fuhr, 991 F.2d 435, 438 (8th Cir. 1993).

The Court will not dismiss Plaintiff's excessive force claim on the basis that Defendants' use of force was reasonable. Viewing the facts in the light most favorable to Plaintiff, there are genuine issues of material fact as to whether Defendants' use of force was objectively reasonable. Plaintiff and Defendants have drastically different accounts of Plaintiff's arrest. Plaintiff's accusations, if believed by the jury, would support a finding that Defendants used more force than was necessary to arrest Plaintiff. See Wagner, 2008 WL 350988, at *5 ("If believed, Plaintiff's version of the events contains a submissible excessive force claim."). The veracity of the accounts is a matter for the jury. See id. Therefore, the Court cannot find that Defendants' use of force was reasonable as a matter of law.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Sean Brown and Pat Colbert's Motion for Summary Judgment (ECF No. 41) is **GRANTED** as to Plaintiff's claim for deliberate indifference to serious medical need, and Plaintiff's claim is dismissed with prejudice. An appropriate Judgment will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that Defendants Sean Brown and Pat Colbert's Motion for Summary Judgment (ECF No. 41) is **DENIED** as to Plaintiff's claim for excessive force.

Dated this  21st  day of December, 2011.

/s/Jean C. Hamilton
UNITED STATES DISTRICT JUDGE